**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KATHY M. PEDERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-09-919 |
| | § | |
| MICHAEL J. ASTRUE, Commissioner, | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

This matter was referred by United States District Judge Lee H. Rosenthal, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #9). In this case, Victor Makris ("Makris"), the attorney for Plaintiff Kathy M. Pederson ("Plaintiff," "Pederson"), moves, under 42 U.S.C. § 406(b), for the fees allegedly due to him under a contingency agreement with his client. (Plaintiff's Motion for Authorization of Attorney's Fees, Pursuant to 42 U.S.C. § 406(b) ["Motion for Attorney's Fees"], Docket Entry #11). Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Defendant," "Commissioner"), has not filed any response to the pending motion. After considering the pleadings, the evidence submitted, and the applicable law, the court RECOMMENDS that the motion be GRANTED, and that Makris be awarded the sum of $29,934.75 in attorney's fees.

**Background**

Before addressing the merits of Makris's claim, it is instructive to note that Plaintiff's case has a long procedural history which requires some explanation. Between 1992 and 1993, Pederson filed applications for both Social Security Disability Insurance benefits ("DIB"), under Title II of the Social Security Act ("the Act"), and for Supplemental Security Income ("SSI") benefits, under

Title XVI of the Act. *See Pederson v. Barnhart*, Civil Action No. H-04-767, at Docket Entry #15 (S.D. Tex. Dec. 10, 2004) (Hughes, J.). In those applications, Pederson claimed that she had been disabled since September 30, 1992, due to a number of ailments, including "lumbar and cervical disk disease, a torn meniscus of the left knee, obesity, migraine headaches, fibromyalgia, osteoarthritis, chronic obstructive pulmonary disease, tachycardia, urinary incontinence, a depressive disorder, and an anxiety disorder." *Id*. On July 18, 1996, an administrative law judge ("ALJ") issued a decision partially favorable to Pederson, finding that she was disabled, and entitled to benefits, for the period from October 3, 1992, through September 26, 1995. *See id*. After the Appeals Council declined to review that decision, Pederson filed an action in federal court. *See id*. Her case was then remanded to the Social Security Administration ("SSA") for a new hearing. *See id*. Pederson's applications were then heard by a different ALJ. *See id*. On November 25, 2003, however, that ALJ concluded, as well, that Pederson was not disabled as of September 26, 1995. *See id*. On February 18, 2004, after her request for an Appeals Council review was denied, Pederson appealed the second ALJ's decision to this court. *See id*. at Docket Entry #2. Her case was assigned to the Honorable Lynn N. Hughes ("Judge Hughes"). On December 10, 2004, the Commissioner moved to remand the action "to the ALJ to consider the entire period from October 14, 1992, and on and for further consideration of Plaintiff's allegations and further evaluation of the treating and examining physician's [sic] opinions of record." *Id*. at Docket Entry #17. Judge Hughes granted that motion. *See id*. at Docket Entry #18. On February 19, 2009, the Commissioner found that Pederson was disabled through 2000.[1] *See id*. at 34. As a result, Pederson was awarded past-due benefits, or "back pay," in the

---

[1] It cannot be discerned whether the ruling specified a particular date in 2000. (*See* Motion for Attorney's Fees at 2).

amount of $54,115.  *See id*.  Before Judge Hughes, Makris sought attorney's fees under a contingency fee agreement that allowed him up to 25% of any back pay award.  *See id*. at Docket Entry #31.  Because he had already received some fees for his work at the administrative level, the amount he sought in federal court was $8,228.75.  *See id*.  On August 27, 2010, Judge Hughes awarded Makris that sum.  *See id*. at Docket Entry #37.

On March 27, 2009, Pederson filed another federal court case, which is now pending before this court.  In this suit, Pederson challenges the Commissioner's February 19, 2009, decision that she was disabled only for a specific period, ending in the year 2000.  (Plaintiff's Original Complaint ["Complaint"], Docket Entry #1).  In response to that challenge, Defendant filed an unopposed motion to remand the case to the Commissioner, citing missing evidence.  (Docket Entry #3).  That motion was granted on April 27, 2009.  (Docket Entry #7).  Apparently, the SSA never located the evidence, and, so, Pederson was given a new hearing before another ALJ.  (*See* Motion for Attorney's Fees at 2).  On March 2, 2010, that ALJ ruled in Pederson's favor, and awarded her additional back pay in the amount of $119,739, and future benefits based on her continuing disability.  (*Id*.).  On August 13, 2010, Makris filed the pending motion for attorney's fees, which is based on his contingency fee agreement with Pederson.  (*Id*. at 1).  Before this court, Makris seeks 25% of the $119,739 back pay award, or $29,934.75.  (*Id*.).  Having reviewed the pleadings, the evidence submitted, and the applicable law, the court recommends that Makris's request be granted.

**Discussion**

When Pederson retained Makris to represent her in her attempt to obtain disability benefits, she signed a contingency fee agreement.  (*See* Motion for Attorney's Fees at 1 and Exhibit ["Ex."]

1). Under that arrangement, she allowed Makris to be compensated for his work, up to 25% of any back pay award she might receive. (*See id.*). The Social Security Act authorizes an award of attorney's fees to those representing social security claimants before the Commissioner. *See* 42 U.S.C. § 406; *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002); *Jeter v. Astrue*, 622 F.3d 371, 376 (5th Cir. 2010). Under § 406(b) of the Act, those awards can be recovered under the following circumstances:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment.

42 U.S.C. § 406(b). In considering a request for attorney's fees, the ultimate issue is whether the award sought is reasonable. *See Gisbrecht*, 535 U.S. at 793; *Jeter*, 622 F.3d at 374. The question of the reasonableness of an award lies squarely within the discretion of the court. *See Gisbrecht*, 535 U.S. at 793; *Jeter*, 622 F.3d at 376; *Pierce v. Barnhart*, 440 F.3d 657, 663 (5th Cir. 2006).

It is now settled that § 406(b) does not preclude the enforcement of contingency fee agreements. *See Gisbrecht*, 535 U.S. at 807. That statute does, however, "call[] for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Id*. In considering the reasonableness of a contingency fee award, courts look to a number of factors, including the quality of the attorney's representation, whether he engaged in dilatory conduct to increase the amount of past-due benefits, or whether the award constitutes a "windfall" for the attorney. *See id.* at 808; *Jeter*, 622 F.3d at 377. Recently, in *Jeter v. Astrue*, the Fifth Circuit held that, under *Gisbrecht*, a court has the option to consider the familiar "lodestar"

4

factors in determining whether a fee request is reasonable or would, in fact, result in a "windfall."[2] *See id*. at 381. The court emphasized, however, that lodestar factors cannot be relied on exclusively. *See id*. at 374, 379-81. Instead, the Fifth Circuit held that a court must also consider "whether an attorney's success is attributable to his own work or instead to some unearned advantage for which it would not be reasonable to compensate him." *Id*. at 380. The Fifth Circuit explained as follows:

> Any other reading [of *Gisbrecht*] would give attorneys a perverse incentive to delay proceedings or expend unnecessary hours in an effort to prolong successful litigation-all to ensure that their § 406(b) fee would not be reduced based on its appearing excessively high in comparison to the number of hours they expended. Likewise, we do not read *Gisbrecht's* "windfall" as support for the proposition that experienced, competent counsel should be punished for accomplishing an arduous task in a shorter span of time than less-experienced, less-aggressive counsel. Accordingly, we interpret *Gisbrecht*[] . . . as an affirmation that if a claimant's success on appeal can be attributed to his attorney's endeavors before the district court, then that attorney should reap the benefit of his work—even if he managed to accomplish a great deal in a small window of time.

*Id*. at 380-81.

In this case, Pederson and Makris entered into an agreement which provided for attorney's fees in the amount of 25% of any past-due benefits awarded to her. (Motion for Attorney's Fees at

---

[2] The "lodestar" method "was developed to implement fee-shifting statutes, which assess fees against the losing party." *Crawford v. Astrue*, 586 F.3d 1142, 1148 (9th Cir. 2009) (citing *Gisbrecht*, 535 U.S. at 802, 806); *see Jeter*, 622 F.3d at 378-79. Under that method, the court first "calculates the 'lodestar,' which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Jimenez v. Wood County*, 621 F.3d 372, 379 (5th Cir. 2010). Once the lodestar is determined, the court can adjust it based on the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases.

*Rice v. Astrue*, 609 F.3d 831, 838 n.32 (5th Cir. 2010) (citing *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)); *see Jimenez*, 621 F.3d at 380.
5

Ex. 1). Following her appeal to this court, Pederson was awarded the sum of $119,739 in past-due benefits. (*Id*. at 1 and Ex. 1). Makris now seeks $29,934.75 of that sum, which is equal to 25% of that award. (*Id*.). The quality of Makris's representation of Pederson is not in dispute. *See Jeter*, 622 F.3d at 377. Looking to some of the lodestar factors, one can see why. *See Rice*, 609 F.3d at 838 n.32. For instance, Makris expended substantial time and labor on Pederson's case; it is undisputed that he has represented Plaintiff for several years on this matter, which involves applications for benefits dating from the early 1990s. *See Pederson*, Civil Action No. H-04-767, at Docket Entry #15. Further, Makris was ultimately successful in obtaining all of the relief his client sought. (Motion for Attorney's Fees at 7 and Ex. 1). His representation resulted in a ruling that she has been continuously disabled and unable to work since 1992. (*See id*.). And, based on that ruling, Plaintiff is now receiving disability benefits, and she has been awarded well over $100,000 in past-due benefits. (*See id*.). Further, as is evident from his *curriculum vitae*, Makris has considerable experience in prosecuting social security claims, both at the administrative level and in federal court. (*Id*. at 7-8 and Ex. 1). Additionally, although it took several years, and three separate appeals to federal court, to achieve the ultimate result, nothing in the procedural history of this case suggests that Makris was responsible for any of the delays. *See Jeter*, 622 F.3d at 377. Moreover, there is no evidence or argument that suggests that Makris's success was not attributable to his own work. *See id*. In short, it cannot be said that the fees Makris seeks would constitute a "windfall." *See id*. Finally, in a declaration signed on July 16, 2010, Pederson stated that she hopes to see Makris awarded the full 25% of her back pay award. (Motion for Attorney's Fees at Ex. 1). She explained,

> My Social Security case took over 12 years until it concluded. The case went to federal court three times with the last appeal being filed in 2009.

> \* \* \*
>
> . . . I was again and again denied benefits more than likely due to my young age.
>
> \* \* \*
>
> I had difficulty finding a lawyer who would accept a young person's case like mine, and who could also understand and articulate medical issues and who would also accept cases like mine for federal court. Mr. Makris took on my case even though in the eyes of Social Security I was a young person and even though I had to prove that I was disabled before the year 2000, which was also the year that the Administrative Judge wanted to cut me off.
>
> \* \* \*
>
> I know that this is my money and not the government's money but I feel in light of the work, sacrifice and waiting that he and his office had to suffer (along with me) that what he asks for is reasonable. I appreciate the court considering my opinion on this matter.

(*Id*.). Certainly, Plaintiff's desire that Makris be awarded the amount that he seeks weighs in favor of a finding that an award based on the contingency agreement is reasonable. *See Gisbrecht*, 535 U.S. at 793. Indeed, the United States Supreme Court, in *Gisbrecht*, emphasized the importance of respecting "the primacy of the lawful attorney-client fee agreement." *Id*.

Attorneys, such as Makris, who represent social security claimants, "assume[] significant risk in accepting these cases, including the risk that no benefits would be awarded or that there would be a long court or administrative delay in resolving the cases." *Crawford*, 586 F.3d at 1152; *see Jeter*, 622 F.3d at 378-79. Given the circumstances of this case, and the Commissioner's lack of opposition,[3] the court cannot say that Makris and Pederson's 25% contingency agreement yields an unreasonable fee award. *See* 42 U.S.C. § 406(b). For these reasons, it is recommended that the motion be granted, and that Makris be awarded the sum of $29,934.75 in attorney's fees.

---

[3] While the motion includes a certificate of conference which states that the Commissioner is opposed to the request for attorney's fees, no response has been filed. Under the Local Rules, the failure to respond to a motion "will be taken as a representation of no opposition." LOCAL RULES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS 7.4.

On August 2, 2010, the Commissioner filed a motion to dismiss this action based on the fact that Plaintiff had obtained a fully favorable ruling at the administrative level. (Defendant's Opposed Motion to Dismiss, Docket Entry #8). In opposition to that motion, Plaintiff expressed concern about dismissal of the case before the court had disposed of the attorney's fees issue, particularly because, at the time, Judge Hughes had yet to rule on the request for fees that was pending in his court, and Plaintiff thought the matters might be consolidated. (Plaintiff's Response in Opposition to Motion to Dismiss, Docket Entry #10). At this point, however, because resolution of the attorney's fees issue is imminent, and as there are no additional matters pending, this case is about to be closed. For that reason, Defendant's motion to dismiss is moot.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Plaintiff's counsel's Motion for Authorization of Attorney's Fees, Pursuant to 42 U.S.C. § 406(b), be **GRANTED**.

It is also **RECOMMENDED** that Plaintiff's counsel be awarded the sum of $29,934.75 in attorney's fees.

It is further **RECOMMENDED** that the court deem Defendant's Motion to Dismiss moot.

**SIGNED** at Houston, Texas, this 25th day of February, 2011.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**